No. 22-13135

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

HONEYFUND.COM, INC., PRIMO TAMPA, LLC, CHEVARA ORRIN, and
WHITESPACE CONSULTING, LLC D/B/A COLLECTIVE CONCEPTS, LLC,
*Plaintiffs-Appellees,*

v.

GOVERNOR, STATE OF FLORIDA, ET AL.,
*Defendants-Appellants.*

Appeal from the United States District Court for the Northern District of Florida
No. 4:22-cv-227 (MW) (MAF)

---

## BRIEF FOR AMICUS CURIAE PEN AMERICAN CENTER

---

Joel S. Perwin, Esq.
1680 Michigan Ave
Suite 700
Miami Beach, FL 33139
Tel. No.: 316814
Email: jperwin@perwinlaw.com

By:   Joel S. Perwin
      Fla. Bar No.: 316814

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26.1, the following persons have or may have an interest in the outcome of this case or appeal, in addition to those listed in Defendants-Appellants' and Plaintiff-Appellees' certificates:

1. Agarwal, Shalini G., *Attorney for Plaintiffs-Appellees*

2. Cepero, Monica, Commissioner of the Florida Commission on Human Relations, *Defendant-Appellant*

3. Chimene-Weiss, Sara, *Attorney for Plaintiffs-Appellees*

4. Cooper & Kirk, PLLC, *Attorneys for Defendants-Appellants*

5. Cooper, Charles J., *Attorney for Defendants-Appellants*

6. DeSantis, Ron, Governor of the State of Florida, *Defendant-Appellant*

7. Farmer, Libby, Commissioner of the Florida Commission on Human Relations, *Defendant-Appellant*

8. Florida Attorney General Service, *Attorney for Defendant-Appellant Moody*

9. Garza, Mario, Commissioner of the Florida Commission on Human Relations, *Defendant-Appellant*

10. Goodman, Rachel E., *Attorney for Plaintiffs-Appellees*

11. Hallward-Driemeier, Douglas, *Attorney for Plaintiffs-Appellees*

12. Hanson, Dawn, Commissioner of the Florida Commission on Human Relations, *Defendant-Appellant*

13. Hart, Larry, Commissioner of the Florida Commission on Human Relations, *Defendant-Appellant*

14. Honeyfund.com, Inc., *Plaintiff-Appellee*

JOEL S. PERWIN, P.A.
1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139 • Tel (305) 779-6090 • jperwin@perwinlaw.com

15. Joel S. Perwin, P.A., *Counsel for Amicus Curiae*

16. Langford, John T., *Attorney for Plaintiffs-Appellees*

17. Longo, Amy Jane, *Attorney for Plaintiffs-Appellees*

18. Margulis, Sara, *Declarant*

19. McBroom, Antonio, *Declarant*

20. McGhee, Darrick, Senior Chair of the Florida Commission on Human Relations, *Defendant-Appellant*

21. Moody, Ashley, Attorney General of the State of Florida, *Defendant-Appellant*

22. Moye, Kenyatta, Commissioner of the Florida Commission on Human Relations, *Defendant-Appellant*

23. Myrtetus, Vivian, Commissioner of the Florida Commission on Human Relations, *Defendant-Appellant*

24. Newhall, Timothy L., *Attorney for Defendant-Appellant Moody*

25. Office of the Attorney General of the State of Florida, *Attorneys for Defendants-Appellants*

26. Ohlendorf, John D., *Attorney for Defendants-Appellants*

27. Orrin, Chevara, *Plaintiff-Appellee and Declarant*

28. Payne, Pamela, Commissioner of the Florida Commission on Human Relations, *Defendant-Appellant*

29. PEN America (PEN American Center), *Amicus Curiae*

30. Perwin, Joel S., *Counsel for Amicus Curiae*

31. Pichard, Jay, Commissioner of the Florida Commission on Human Relations, *Defendant-Appellant*

JOEL S. PERWIN, P.A.

1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139 • Tel (305) 779-6090 • jperwin@perwinlaw.com

32. Primiano, Angela, Vice Chair and Commissioner of the Florida Commission on Human Relations, *Defendant-Appellant*

33. Primo Partners III LLC, *Parent Company of Plaintiff-Appellee Primo Tampa LLC*

34. Primo Partners LLC, *Parent Company of Primo Partners III LLC*

35. Primo Tampa LLC, *Plaintiff-Appellee*

36. Protect Democracy, *Attorneys for Plaintiffs-Appellees*

37. Ramer, John D., *Attorney for Defendants-Appellants*

38. Ropes & Gray, LLP, *Attorneys for Plaintiffs-Appellees*

39. Whitespace Consulting LLC d/b/a Collective Concepts LLC, *Plaintiff-Appellee*

40. Wold, Megan M., *Attorney for Defendants-Appellants*

Counsel for *Amicus* certifies that *Amicus Curiae* PEN American Center has no parent corporations or any other publicly held corporations that own 10% or more of its stock.

By:   s/Joel S. Perwin

C 3 of 3

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ......................... C1

TABLE OF CONTENTS .......................................... i

TABLE OF AUTHORITIES ........................................ ii

INTEREST OF AMICUS CURIAE .................................. 1

SUMMARY OF ARGUMENT ...................................... 1

ARGUMENT .................................................... 3

I.    Free and open classroom discourse is foundational to academic
freedom, a concept deeply rooted in First Amendment doctrine ......... 3

II.    Educational Gag Orders are Chilling Speech across the Nation ......... 4

III.    HB 7 Constrains Freedom of Inquiry in Violation of the First Amendment  8

CONCLUSION ................................................. 12

CERTIFICATE OF COMPLIANCE ................................. 13

CERTIFICATE OF SERVICE ..................................... 14

i

## **TABLE OF AUTHORITIES**

### **Cases**

*Chandler v. James*, 180 F.3d 1254 (11th Cir.1999) ........................ 10

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004) ...... 10

*Honeyfund.com, Inc. v. DeSantis*, 2022 WL 3486962
(N.D. Fla. Aug. 18, 2022) ......................................... 2, 3

*Keyishian v. Board of Regents*, 385 U.S. 589 (1967) ........................ 4

*R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992) ...................... 11

*Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995) ....... 9

*Searcey v. Harris*, 888 F.2d 1314 (11th Cir.1989) ......................... 10

*Shelton v. Tucker*, 364 U.S. 479 (1960) .................................. 4

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) .......................... 9

*Stanley v. Georgia*, 394 U.S. 557 (1969) ................................. 11

*Sweezy v. New Hampshire*, 354 U.S. 234 (1957) ........................... 3

*Tinker v. United States*, 393 U.S. 503 (1969) .......................... 8, 11

*United States v. Associated Press*, 52 F. Supp. 362 (S.D.N.Y. 1943) .......... 4

### **Statutes**

22 RS BR 69 (Ky., 2022) ............................................ 7

Fla. Stat. Ann. § 760.10(8) ...................................... 2, 4, 7

Fla. Stat. § 1000.5 (2022) ........................................ 2, 4

### **Other Authorities**

Allen, Joseph, "Education and Freedom in a Democracy." *Bulletin of the American*

ii

*Association of University Professors (1915-1955)* 23, no. 7 (1937) . . . . . . . . . . . 2

Fernando, Christine, "Critical race theory bans are adding more anxiety to stressed teachers: 'It's like walking a tightrope'," *USA Today*, September 8, 2021 . . . . . . . 6

Hixenbaugh, Mike and Hylton, Antonia, "Southlake school leader tells teachers to balance Holocaust books with 'opposing' views," *NBC News*, October 14, 2021 . 6

Knowles, Hannah, "Critical race theory ban leads Oklahoma college to cancel class that taught 'white privilege'," *The Washington Post*, May 29, 2021 . . . . . . . 5

Morrow, Brendan, "Anti-critical race theory parents reportedly object to teaching Ruby Bridges book," *The Week*, July 8, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PEN America, *Index of Educational Gag Orders* (last updated January 6, 2023) . 5

Press Release, *Florida Office of the Governor, Governor DeSantis Announces Legislative Proposal to Stop W.O.K.E. Activism and Critical Race Theory in Schools and Corporations* (Dec. 15, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Vock, Daniel C., "GOP furor over 'critical race theory' hits college campuses," *Iowa Capital Dispatch*, July 3, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Young, Jeremy C. and Friedman, Jonathan, *America's Censored Classrooms* (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Young, Jeremy C. and Friedman, Jonathan, *Educational Gag Orders: Legislative Restrictions on the Freedom to Read, Learn, and Teach* (2021) . . . . . . . . . . . . . . 8

JOEL S. PERWIN, P.A.
1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139 • Tel (305) 779-6090 • jperwin@perwinlaw.com

## INTEREST OF AMICUS CURIAE[1]

With this brief, *Amicus* seeks to assist the court by outlining the enduring importance of free and open discourse in the K-12 and university settings, explaining the connection between the foreclosure of certain areas of inquiry and anti-democratic forms of government, and noting the deleterious effect of Florida House Bill 7 ("HB 7"), the law at issue in this appeal, on educators at all levels in the state of Florida.

*Amicus* PEN America is a nonprofit, nonpartisan public-policy organization with an abiding interest in protecting free expression as the cornerstone of a robust and healthy democracy. PEN America celebrates free expression and fights for the freedom to read, learn, and teach, all core elements of democracy and free expression.

## SUMMARY OF ARGUMENT

Plaintiff-Appellees Honeyfund.com, Inc., Primo Tampa, Inc. and Chevara Orrin and Whitespace Consulting, LLC d/b/a Collective Concepts, LLC

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No such monetary contributions were made by anyone other than *amicus* and their counsel.

JOEL S. PERWIN, P.A.
1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139 • Tel (305) 779-6090 • jperwin@perwinlaw.com

("Honeyfund")[2] are challenging Florida's House Bill 7, titled the "Individual Freedom Act" and referred to as the "Stop W.O.K.E. Act" ("HB 7"), enacted by the Florida legislature to address the substance of diversity, equity, and inclusion ("DEI") employee trainings conducted by or for public and private employers as well as the teaching or discussion of enumerated concepts, including issues of race and gender, in K-12 and university classrooms or settings.[3]

Government-imposed curtailment of topics addressed in the classroom undermines the principle of free and open discourse in education, long a democratic bellwether.[4] In this brief, *Amicus* outlines this principle and explains the ways in which HB 7 poses critical challenges to educators across Florida.

---

[2] Plaintiff-Appellees are employers and consultants who had provided, conducted, or planned to provide or conduct DEI trainings to or for employees, and whose trainings were suspended, altered, or canceled after the enactment of HB 7. *Honeyfund.com, Inc. v. DeSantis*, 2022 WL 3486962 at *3, *4 (N.D. Fla. Aug. 18, 2022)

[3] Fla. Stat. Ann. § 760.10(8); Fla. Stat. Ann. § 1000.5(4) (West) (prohibiting, *inter alia*, "training, instruction, or any other required activity that espouses, promotes, advances, inculcates, or compels" an individual to believe subsequently listed concepts constitute "discrimination based on race, color, sex, or national origin")

[4] Allen, Joseph, "Education and Freedom in a Democracy." *Bulletin of the American Association of University Professors (1915-1955)* 23, no. 7 (1937): 558–65, https://doi.org/10.2307/40219535 ("Education in a democracy...must be conducted with a generous welcome to new ideas and methods [and] with tolerance for the opinions of others").

2

HB 7 is currently preliminarily enjoined.[5] In the brief period that HB 7 was in effect, the law had a profound chilling effect on not only employers and entities such as Plaintiff-Appellees, but also on teachers, professors, administrators, and others in the state's education sphere.

## ARGUMENT

### I. Free and open classroom discourse is foundational to academic freedom, a concept deeply rooted in First Amendment doctrine

"No one should underestimate the vital role in a democracy that is played by those who guide and train our youth." So noted the U.S. Supreme Court nearly seven decades ago, continuing, "To impose any strait jacket upon the intellectual leaders in our colleges and universities would imperil the future of our Nation. . . Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise, our civilization will stagnate and die." *Sweezy v. New Hampshire,* 354 U.S. 234, 250 (1957).

The exploration of new ideas and concepts is a foundational aspect of the classroom environment. That instructors and students may engage in lines of inquiry free from government interference is long supported by free speech jurisprudence; it emphasizes that the First Amendment "does not tolerate laws that

---

[5] *Honeyfund.com,* 2022 WL 3486962 at *15

3

cast a pall of orthodoxy over the classroom," *Keyishian v. Board of Regents*, 385 U.S. 589, 603 (1967), which is, in particular, the "marketplace of ideas." *Id.* (internal quotations omitted). This is tied inextricably to democratic norms, furthered via "wide exposure to that robust exchange of ideas which discovers truth 'out of a multitude of tongues, [rather] than through any kind of authoritative selection.'" *Id.* (quoting *United States v. Associated Press*, 52 F. Supp. 362, 372 (S.D.N.Y. 1943)). The furtherance of democratic norms in the form of "vigilant protection of constitutional freedoms" is most vital in the classroom. *Shelton v. Tucker*, 364 U.S. 479, 487 (1960).

## II.    Educational Gag Orders are Chilling Speech across the Nation

HB 7 sets out a set of eight concepts that may not be included in any "training or instruction" that "espouses, promotes, advances, inculcates, or compels" the concepts. The concepts are focused on race, color, sex, and national origin.[6] In limiting the teaching, explanation, or examination of particular sentiments, HB 7 is illustrative of recent legislative efforts across the U.S. to restrict teaching and training of particular topics, in K-12 schools, higher

---

[6] *Id.* at *1 (quoting Fla. Stat. Ann. § 760.10(8)); Fla. Stat. Ann. § 1000.5(4) (West)

4

education, state agencies and institutions, and workplace settings. *Amicus* refers to these bills as "educational gag orders."[7]

As of January 6, 2023, 210 educational gag orders had been introduced in 41 states since January 2021.[8] Instances of these types of bills being introduced grew 250 percent between 2021 and 2022.[9] The chilling effect and silencing of speech in educational institutions due to these bills was almost immediate. In the first several months of 2021, educational gag orders were behind decisions to suspend a sociology course on race and ethnicity in Oklahoma,[10] provide professors at Iowa State University written guidance for how to avoid 'drawing scrutiny' for their teaching under their state's Act,[11] instruct teachers that they should balance having

---

[7] Young, Jeremy C. and Friedman, Jonathan, *Educational Gag Orders: Legislative Restrictions on the Freedom to Read, Learn, and Teach* (2021), https://pen.org/report/educational-gag-orders/ ("*Educational Gag Orders*")

[8] PEN America, *Index of Educational Gag Orders* (last updated January 6, 2023), https://docs.google.com/spreadsheets/d/1Tj5WQVBmB6SQg-zP_M8uZsQQGH09TxmBY73v23zpyr0/edit#gid=107383712 (cataloging bills from 41 states introduced between January 1, 2021 and January 6, 2023)

[9] Young, Jeremy C. and Friedman, Jonathan, *America's Censored Classrooms* (2022), https://pen.org/report/americas-censored-classrooms/

[10] Knowles, Hannah, "Critical race theory ban leads Oklahoma college to cancel class that taught 'white privilege'," *The Washington Post*, May 29, 2021, https://www.washingtonpost.com/education/2021/05/29/oklahoma-critical-race-theory-ban/

[11] Vock, Daniel C., "GOP furor over 'critical race theory' hits college campuses," *Iowa Capital Dispatch*, July 3, 2021,

JOEL S. PERWIN, P.A.
1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139 • Tel (305) 779-6090 • jperwin@perwinlaw.com

books on the Holocaust with those with "opposing views" in Texas,[12] and

challenge the teaching of civil rights activist Ruby Bridges' autobiographical

picture book about school desegregation in Tennessee.[13] Entering the 2021-2022

school year, teachers reported feeling nervous, anxious, and concerned about

losing their jobs; shared anecdotes of school administrators seeking to change

curricula; and noted their own efforts to alter their lessons, due to the enactment of

these bills or even administrative "scare tactics" that lack legal teeth but

nonetheless cast a long shadow over the classroom.[14]

As the sweeping introduction of educational gag orders continues across the

country, harsher provisions of fines, penalties, and private causes of action have

become more commonplace. Several bills impose civil or criminal penalties–in

---

https://iowacapitaldispatch.com/2021/07/03/gop-furor-over-critical-race-theory-hits-college-campuses/

[12] Hixenbaugh, Mike and Hylton, Antonia, "Southlake school leader tells teachers to balance Holocaust books with 'opposing' views," *NBC News*, October 14, 2021, https://www.nbcnews.com/news/us-news/southlake-texas-holocaust-books-schools-rcna2965

[13] Morrow, Brendan, "Anti-critical race theory parents reportedly object to teaching Ruby Bridges book," *The Week*, July 8, 2021, https://theweek.com/news/1002407/anti-critical-race-theory-parents-reportedly-object-to-teaching-ruby-bridges-book

[14] Fernando, Christine, "Critical race theory bans are adding more anxiety to stressed teachers: 'It's like walking a tightrope'," September 8, 2021, https://www.usatoday.com/story/news/education/2021/09/08/critical-race-theory-bans-stress-history-teachers/5618345001/?gnt-cfr=1

JOEL S. PERWIN, P.A.
1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139 • Tel (305) 779-6090 • jperwin@perwinlaw.com

Kentucky, for example, proposed penalties are up to $100,000.[15] At least nine bills, including HB 7,[16] allow for a private cause of action. In the education sphere, such a provision essentially deputizes parents and students to surveil their teachers; for example, at least one state, New Hampshire, has set up a webpage to enable reporting.[17] Other states have similarly styled bill language, such as a South Carolina proposal to install telephone hotlines open for the public to report a teacher who runs afoul of a prohibition on providing "instruction, presentations, discussions, counseling, or materials" to students on certain topics, or "omits relevant and important context" from a lesson.[18]

Educational gag orders seek to use state power to exert ideological control over educational institutions, imposing government dictates on teaching and learning, and as such, appear designed to chill academic and educational discussions of topics that the state disfavors. The bills' vague, sweeping language, particularly when coupled with potential imposition of civil and/or criminal

---

[15] 22 RS BR 69, §(3)(c) (Ky., 2022)

[16] Fla. Stat. Ann. § 760.10 (2022)

[17] https://www.education.nh.gov/who-we-are/deputy-commissioner/office-of-governance/right-to-freedom-from-discrimination (presenting guidance for "Filing a Public Education Intake Questionnaire")

[18] H 4605, 124th Legislative Session (S.C., 2021-2022), *available at* https://www.scstatehouse.gov/sess124_2021-2022/bills/4605.htm

JOEL S. PERWIN, P.A.
1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139 • Tel (305) 779-6090 • jperwin@perwinlaw.com

penalties, necessarily means that they will be applied broadly in an effort to avoid

running afoul of their measures. This threatens to effectively ban a wide swath of

literature, curricula, and historical materials, and casts a chilling effect over how

the bills' target institutions and their personnel discharge their primary obligations.

The embrace of these bills demonstrates a disregard for academic freedom and the

values of free speech and open inquiry that are enshrined in the First Amendment

and that anchor a democratic society.

Like HB 7, the current swath of educational gag orders target discussions of

race, racism, gender, and American history, banning a series of "prohibited" or

"divisive" concepts.[19]  Yet permitting a precedent of the use of the machinery of

government in attempts to limit Americans' ability to express themselves–and

particularly in order to block the expression of information, ideas, or theories–by

no means ensures such efforts will be limited to the current concepts of focus.

## III.    HB 7 Constrains Freedom of Inquiry in Violation of the First Amendment

Classrooms in the United States "may not be confined to the expression of

those sentiments that are officially approved." *Tinker v. United States*, 393 U.S.

503, 511 (1969). Moreover, the prohibition of a particular opinion is not permitted

under the Constitution, without evidence that dissemination of the opinion is

---

[19] Young, Jeremy C. and Friedman, Jonathan, *Educational Gag Orders* (2021)

JOEL S. PERWIN, P.A.
1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139 • Tel (305) 779-6090 • jperwin@perwinlaw.com

"necessary to avoid material and substantial interference with schoolwork or discipline." *Id.*

Under either of the above tenets, HB 7 fails constitutional muster. The law limits the teaching, explanation, or examination of particular sentiments, while simultaneously allowing those sentiments to be condemned. Further, the State's reasoning for implementing this legislation is viewpoint-, not schoolwork- or discipline-based. To wit, the State seeks with the bill "to fight back against woke indoctrination"[20] and to "put an end to wokeness that is permeating our schools and workforce,"[21] illustrating the State's focus on a particular set of viewpoints.

Viewpoint discrimination is particularly offensive to the First Amendment, as the Supreme Court has repeatedly held. *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional."); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 578-79 (2011)("The State may not burden the speech of others in order to tilt public debate in a preferred direction.") This court, too, has noted that censorship

---

[20] Press Release, *Florida Office of the Governor, Governor DeSantis Announces Legislative Proposal to Stop W.O.K.E. Activism and Critical Race Theory in Schools and Corporations* (Dec. 15, 2021), quoting Governor Ron DeSantis, https://www.flgov.com/2021/12/15/governor-desantis-announces-legislative-proposal-to-stop-w-o-k-e-activism-and-critical-race-theory-in-schools-and-corporations/

[21] *Id.*, quoting Lieutenant Governor Jeanette Nuñez

9

in the form of viewpoint discrimination is among the "most egregious" of First Amendment violations. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1279–80 (11th Cir. 2004)(citing *Chandler v. James*, 180 F.3d 1254, 1265 (11th Cir.1999)("viewpoint discrimination[ ][is] the most egregious form of content-based censorship") and *Searcey v. Harris*, 888 F.2d 1314, 1324 (11th Cir.1989)("The prohibition against viewpoint discrimination is firmly embedded in first amendment analysis.")).

HB 7's viewpoint discrimination is plain and cannot survive any level of constitutional scrutiny. Under HB 7, teachers in Florida are prohibited from sharing their insights and expertise with their students on the eight banned topics if they fail to adopt the preferred view of the state. In the district court, the state of Florida admitted that one of the banned concepts is, in essence, the concept of affirmative action. That means that teachers could not explain that concept of affirmative action or cite to any existing research or scholarship that explain the positive impacts of affirmative action. On the other hand, they could criticize its historic use to achieve racial equity in academic settings. Beyond teachers, the law also reaches anyone who would come to the classroom to share their perspectives from speaking in support of the eight banned concepts. That would mean that a school could not organize or host an event in which Charlie Christ, the Democratic candidate for Governor of Florida in 2022, and Gov. Ron DeSantis debate

Joel S. Perwin, P.A.
1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139 • Tel (305) 779-6090 • jperwin@perwinlaw.com

affirmative action, because the state has decided that Christ's support for affirmative action cannot be spoken aloud in a school setting.

In enacting HB 7, the state of Florida seeks "to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensbury rules." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992). If the state cannot do that when prohibiting fighting words, as the Supreme Court held in *R.A.V.*, it cannot do so when regulating classroom discussions.

To make matters worse, HB 7 also infringes on students' right to receive information. The Supreme Court has long recognized that the First Amendment, in addition to ensuring the right to speak, also ensures the right to receive information. *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). By eliminating certain viewpoints on important topics from the classroom, HB 7 denies students the ability to receive a wide array of ideas that will help them best participate in society in violation of their constitutional right to become acquainted with a diversity of viewpoints. It also inhibits their ability to share and to speak in the classroom setting about their lived experience and their own research if it diverges from the state's approved script, in contravention of the Supreme Court's decision in *Tinker*.

JOEL S. PERWIN, P.A.
1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139 • Tel (305) 779-6090 • jperwin@perwinlaw.com

## CONCLUSION

For the foregoing reasons, *Amicus* urges this Court to affirm the District Court.

Dated: January 18, 2023                    Respectfully submitted,

                                          *s/*Joel S. Perwin
                                          Joel S. Perwin
                                          Fla. Bar No.: 316814
                                          Joel S. Perwin, P.A.
                                          1680 Michigan Ave., Suite 700
                                          Miami Beach, FL 33139
                                          Tel.: (305) 779-6090
                                          Email: jperwin@perwinlaw.com
                                          *Counsel for Pen America*

12

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Federal Rule of Appellate Procedure 32(g)(1)

that the attached brief is proportionally spaced, has a typeface of 14 points, and

contains 2,375 words.

*s/*Joel S. Perwin
Joel S. Perwin

13

## CERTIFICATE OF SERVICE

I, Joel S. Perwin, counsel for Amicus Curiae and a member of the Bar of this Court, certify that on January 18, 2023, a copy of the foregoing was filed electronically through the appellate CM/ECF system with the Clerk of the Court. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/*Joel S. Perwin
Joel S. Perwin

14